USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/19/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOROTHY LEMON,

    Plaintiff,

v.

JERRIETTA R. HOLLINGER and GANZ & HOLLINGER, P.C.,

    Defendants.

No. 17-CV-4725 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Dorothy Lemon sued Defendants Jerrietta Hollinger and Ms. Hollinger's law firm, Ganz & Hollinger, P.C., asserting claims for negligence, tortious interference, fraud, and breach of contract. Defendants move to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, that motion is granted except as to Plaintiff's tortious-interference claim. No later than January 12, 2018, however, Plaintiff is directed to show cause why the Court should not also dismiss that claim.

## BACKGROUND

Plaintiff was a close and long-time friend of Allan Curry, who died on or about October 11, 2013, and who was represented by Ms. Hollinger and her firm before his death. Compl. ¶¶ 7, 16 (Dkt. 1). This is a dispute about whether Defendants unlawfully deprived Plaintiff of various gifts—namely, approximately $175,000 in shares of stock in a company called Autoliv, Inc., and $200,000 in cash—that Plaintiff alleges Mr. Curry intended to give to her before his death. The following facts are drawn from the Complaint and are assumed to be true for purposes of resolving

1

Defendants' motion to dismiss. *See Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

**A. Factual Background**

Prior to June 2013, Plaintiff was designated as the executor of Mr. Curry's estate. Compl. ¶ 40. Around that time, however, Mr. Curry began to suffer from "greatly declining health." *Id.* ¶ 8. Plaintiff alleges that someone told her about Ms. Hollinger and her law firm, and that Plaintiff passed Ms. Hollinger's name along to Mr. Curry. *Id.* ¶ 43. Mr. Curry then hired Defendants to represent him in drafting a new will and in conveying gifts "in causa mortis" prior to his death. *Id.* ¶¶ 8, 43. In his new will, Mr. Curry "greatly reduced the amounts he left to" Plaintiff in favor of a relatively new acquaintance, Alan Stabile. *Id.* ¶ 40. Mr. Curry also designated Mr. Stabile as the new executor of his estate, replacing Plaintiff. *Id.* Two months later, Ms. Hollinger represented both Mr. Curry and Mr. Stabile in a real-estate deal where Mr. Curry converted an apartment he owned into a joint tenancy shared by him, Mr. Stabile, and Mr. Stabile's wife. *Id.* ¶ 38. Ms. Hollinger never told Plaintiff that about her representation of Mr. Stabile. *Id.* ¶¶ 43, 56.

Over the following months, Ms. Hollinger also advised Mr. Curry in his capacity as executor of the estate of his close friend, Helen Holman, who had passed away. *Id.* ¶¶ 13–14. Mr. Curry was the primary beneficiary of the assets in the Holman estate, which included shares in Autoliv, Inc. worth approximately $175,000. Compl. ¶¶ 13–15, 32. According to the Complaint, Mr. Curry instructed Ms. Hollinger and her firm to transfer the Autoliv shares from the Holman estate to him, and then from him to Plaintiff. *Id.* ¶¶ 9–11. Later, Mr. Curry and Ms. Hollinger met with Autoliv's transfer agent so that Mr. Curry could re-register the shares in his own name and then gift the shares to Plaintiff. *Id.* ¶ 12. Mr. Curry signed the required forms and instructed Ms. Hollinger to transfer the shares to Plaintiff, but Ms. Hollinger never actually completed the

transfers. *Id.* ¶¶ 16–19. Ms. Hollinger sold a few thousand dollars' worth of the shares and returned the proceeds to the Holman estate. *Id.* ¶ 17. The remaining shares stayed in that estate until they were sold to pay taxes. *Id.* ¶¶ 17, 20. Plaintiff did not receive any of these proceeds. *Id.* ¶¶ 20–22. According to the Complaint, Ms. Hollinger did not inform Plaintiff that she was entitled to the Autoliv stock. *Id.* ¶ 42.

Before his death, Mr. Curry also gave Plaintiff a check—which he had instructed Ms. Hollinger to write out and which he had signed—for $200,000. *Id.* ¶¶ 44–48. Ms. Hollinger told Plaintiff that she could deposit it, and Plaintiff did so. *Id.* ¶¶ 48–49. According to the Complaint, Mr. Stabile later learned of this gift and told Plaintiff that he would call the police if she did not return the money. *Id.* ¶ 50. Ms. Hollinger allegedly assisted Mr. Stabile in getting the funds back by "caus[ing] Mr. Curry to sign a letter requesting the return of the funds" and by instructing Plaintiff to return the money. *Id.* ¶¶ 50–51. Plaintiff did as instructed. *Id.* ¶ 50. According to the Complaint, Ms. Hollinger did not inform Plaintiff that she "had no legal obligation to return the funds." *Id.* ¶ 53.

### B. Procedural History

On June 22, 2017, Plaintiff sued Defendants, asserting four causes of action: (1) negligence based on Ms. Hollinger's failure to follow Mr. Curry's instructions to deliver the Autoliv shares, (2) tortious interference with Plaintiff's right to the shares and the $200,000 check, (3) fraud based on Ms. Hollinger's communications with her about the shares and the check, and (4) breach of contract between Defendants and Mr. Curry. Compl. ¶¶ 26, 58, 60, 63–65; *see* Pl. Opp'n Mem. at 5 (Dkt. 17). On July 20, 2017, Defendants moved to dismiss the Complaint under Rule 12(b)(6), on August 7, 2017, Plaintiff opposed the motion, and on August 11, 2017, Defendants filed a reply. *See* Dkts. 13, 14, 17, 20.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

## DISCUSSION

### A. Jurisdiction and Choice of Law

The Court has diversity jurisdiction over this matter. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Here, Plaintiff alleges that she is entitled to at least $375,000 in damages, that she is a citizen of Florida, and that Defendants are citizens of or incorporated in New York. Compl. ¶¶ 1–3, 65.

The parties agree that New York law applies to Plaintiff's claims. *See* Pl. Opp'n Mem. at 7–14; Defs.' Mem. at 4–6 (Dkt. 14). This agreement—"as evidenced by [their] reliance on that

law . . . in [their] briefing"—"ends the choice-of-law inquiry," and New York law applies. *See Bennett v. Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).

### B. Negligence and Legal Malpractice

As an initial matter, Defendants argue that Plaintiff's negligence claim must be dismissed because it is, in essence, a legal-malpractice claim and because, so construed, the claim fails as a matter of law. "On a motion to dismiss, a court must look to the essence of each claim and not merely the form in which it is pleaded." *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 700 (S.D.N.Y. 2002). Under New York law, "[l]egal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her professional duties negligently." *Id.*; *see also Crews v. Cty. of Nassau*, 612 F. Supp. 2d 199, 214–15 (E.D.N.Y. 2009). Plaintiff's negligence claim—that Defendants "were negligent in carrying out [Mr. Curry's] instructions," Compl. ¶ 26—is based on Ms. Hollinger's allegedly negligent performance of her professional duties to her client. The Court therefore construes Plaintiff's negligence claim as a legal-malpractice claim. *See Case v. Clivilles*, 216 F. Supp. 3d 367, 378, 379 (S.D.N.Y. 2016) (construing a claim for "professional negligen[ce]" as a claim for legal malpractice under New York law).

Defendants contend that Plaintiff's claim for legal malpractice fails because she was never in privity with Defendants. Under New York law, "a third party, without privity, cannot maintain a claim against an attorney in professional negligence, absent fraud, collusion, malicious acts or other special circumstances." *Estate of Schneider v. Finmann*, 933 N.E.2d 718, 720 (N.Y. 2010) (citation and internal quotation omitted). Plaintiff seems to concede that she was not in privity with Defendants and, in any event, she has never alleged that she entered into a contract with them.

5

*See* Pl. Opp'n Mem. at 7–10. Thus, Plaintiff herself was not Defendants' client and does not stand in privity with them. *See Sutch v. Lenz*, 129 A.D.3d 1137, 1139 (N.Y. App. Div. 2015) (finding a lack of privity where "Plaintiff [did] not contend, and the record [did] not otherwise reflect, that he had a contractual relationship with defendants.").

Plaintiff nonetheless asserts that she has stated a claim for legal malpractice for three reasons. First, she asserts that the privity requirement should not apply to her because Ms. Hollinger defrauded her. Pl. Opp'n Mem. at 8–9. For the reasons explained below, however, Ms. Hollinger has not adequately alleged fraud. *See Betz v. Blatt*, 116 A.D.3d 813, 815 (N.Y. App. Div. 2014) (holding that a plaintiff without privity "did not assert a viable cause of action . . . for legal malpractice" because the "plaintiff failed to plead specific facts tending to show that . . . defendants engaged in fraud[.]").

Second, Plaintiff says that the privity requirement does not apply because, "[i]f Ms. Lemon cannot sue Ms. Hollinger, Ms. Lemon may lack any remedy." Pl. Opp'n Mem. at 9. Plaintiff claims that "courts have not required strict privity where that result may prevent the plaintiff-intended beneficiary from recovery," but she has not actually cited any such cases. *See id.* She does cite one case—*Deep Woods Holdings v. Pryor Cashman*, 145 A.D.3d 447 (N.Y. App. Div. 2016)—where the court held that there were "special circumstances" excusing privity because there was a possibility that no one at all "would be able to sue defendants for malpractice." *Id.* 450. But the court came to that conclusion because to do otherwise would have "insulate[d] defendants from liability"—not because the plaintiff in that case would otherwise lack a remedy. *Id.* Here, however, Mr. Curry's estate representative would, in theory at least, be able to sue Defendants for their malpractice. *See Estate of Schneider*, 933 N.E.2d at 720 ("We now hold that privity, or a relationship sufficiently approaching privity, exists between the personal

6

representative of an estate and the estate planning attorney."). Plaintiff responds that the executor of Mr. Curry's estate, Mr. Stabile, has "no financial interest to try to enforce the in causa mortis gifts" to Plaintiff. Pl. Opp'n Mem. at 9. But the Complaint itself identifies another motivation for Mr. Stabile, and Curry's estate, to sue Defendants for malpractice: according to the Complaint, Defendants should have moved the Autoliv shares out of the Holman estate and into Mr. Curry's name, but the shares remained in the Holman estate. Thus, under Plaintiff's version of the facts, Mr. Stabile and the Curry estate might benefit from suing Defendants for their negligent failure to transfer the shares into Mr. Curry's name. Moreover, to the extent Plaintiff wishes to challenge Mr. Stabile's conduct or fitness as executor of Mr. Curry's estate, she cannot do so through a lawsuit against Defendants.[1]

Third, Plaintiff contends that she and Defendants had a relationship that "was 'so close' as to approach privity" and she "justifiably relied" on Ms. Hollinger's advice. *See* Pl. Opp'n Mem. at 10. New York law permits third parties with "sufficiently close" relationships with attorneys to recover for negligence even in the absence of contractual privity. *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 605 N.E.2d 318 (N.Y. 1992). To determine whether Plaintiff had such a relationship with Defendants, the Court "must look to the words and actions of the parties[.]" *Moran v. Hurst*, 32 A.D.3d 909, 911 (N.Y. App. Div. 2006). "The unilateral belief of a plaintiff alone does not confer upon him or her the status of a client." *Id.* Instead, Plaintiff must at least allege that Defendants "affirmatively led [her] to believe that [they] were acting as [her] attorney or knowingly allowed [her] to proceed under that misconception." *See id.*

---

[1] Plaintiff sued Mr. Stabile in 2014, *Lemon v. Stabile*, 14-cv-97 (RMB), for various claims including that he had unduly influenced Mr. Curry and had breached his fiduciary duty to carry out Mr. Curry's wishes. Plaintiff voluntarily dismissed that case in 2015, but there may still be a related pending action in New York probate court. *See* Defs.' Reply Mem. at 1 (Dkt. 20) (asserting that the federal case was voluntarily dismissed "in order to properly pursue" the same issues in probate court).

7

Plaintiff has not alleged any facts tending to show that Ms. Hollinger either led Plaintiff to believe that they had an attorney-client relationship or knowingly allowed Plaintiff to proceed under the misconception that they did. *See id.* In total, Plaintiff alleges that she had the following communications with Ms. Hollinger: (1) Ms. Hollinger "advise[d] Plaintiff in June, 2013 [sic] that she had been instructed by Mr. Curry to have some stock sold and that Mr. Curry had directed that Plaintiff would receive a nice chunk of money from the sale of that stock," Compl. ¶ 11; (2) Ms. Hollinger "frequently spoke" with Plaintiff "about the . . . gifts" from Mr. Curry to her, *id.* ¶ 42; (3) Ms. Hollinger "invited Plaintiff" into the room where Mr. Curry handed Plaintiff the $200,000 check, *id.* ¶ 48; (4) Ms. Hollinger "instructed Plaintiff to deposit the check in Plaintiff's account when she returned home," *id.* ¶ 49; and (5) Ms. Hollinger later "instructed Plaintiff to return the money," *id.* ¶ 51. These communications do not give rise to a plausible inference either that Ms. Hollinger gave Plaintiff legal advice or that Ms. Hollinger was "well aware of both [Plaintiff's] purpose in obtaining [any advice] and [her] ultimate reliance on" it. *See Droz v. Karl*, 736 F. Supp. 2d 520, 526 (N.D.N.Y. 2010) (citing *Prudential*, 605 N.E.2d at 321). In every interaction, Ms. Hollinger was acting as Mr. Curry's—or perhaps Mr. Stabile's—agent, not as Plaintiff's.

In response, Plaintiff relies on the *Prudential* case, in which the New York Court of Appeals found that there was a relationship close enough to privity between Prudential and the defendant law firm where the firm drafted an opinion letter at the specific direction of its client and then sent that letter directly to Prudential with the "awareness and understanding that Prudential would rely on the letter" to decide on its course of action. 605 N.E.2d at 322. In contrast, Plaintiff alleges that Ms. Hollinger demanded that Plaintiff return the $200,000 in cash after Plaintiff deposited the check. Even considered in the light most favorable to Plaintiff, nothing about this fact can be construed to create a relationship similar to that between attorneys and their

8

clients. Ms. Hollinger's demand for payment on behalf of her actual client—seemingly Mr. Curry—was neither an offer of representation nor legal advice on which Plaintiff could be expected to rely. It was a demand, not an opinion letter. *Compare id.* at 321–22. And the Complaint does not identify any other actions or words by Ms. Hollinger that could have created a "bond . . . [that] was sufficiently close to establish a duty of care" between Plaintiff and Defendants. *Id.*[2] Nor does Plaintiff—an intended beneficiary of a gift from Defendants' client—share a relationship with Defendants analogous to that of a trustee or personal representative of an estate who "stands in the shoes" of Mr. Curry. *Estate of Schneider*, 933 N.E.2d at 720; *see Rhodes v. Honigman*, 131 A.D.3d 1151, 1152 (N.Y. App. Div. 2015) (finding that "decedent's three daughters in their individual capacities" as trust beneficiaries lacked privity).[3] Therefore, Plaintiff does not satisfy the privity requirement or any of its exceptions. She has thus failed to state a claim for legal malpractice.

## C. Duplicative Claims

Defendants argue that Plaintiff's remaining claims for fraud, tortious interference, and breach of contract are duplicative with her claim for legal malpractice and, thus, should be merged and dismissed. Defs.' Mem. at 3, 5; *see Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539,

---

[2] Plaintiff repeatedly alleges that she relied on Ms. Hollinger, *see* Compl. ¶¶ 43, 56, but, as explained above, "[t]he unilateral belief of a plaintiff alone does not confer upon him or her the status of a client." *Moran*, 32 A.D.3d at 911. Thus, Plaintiff's allegations about her reliance on Ms. Hollinger do not amount to an allegation of a relationship between them under New York law. *See also Prudential*, 605 N.E.2d at 321–23. Plaintiff also says in the Complaint that Ms. Hollinger "knew or should have known that Plaintiff relied upon [her] for advice and for conveying to Plaintiff accurate information." Compl. ¶ 43. In support, Plaintiff alleges that she gave Mr. Curry Ms. Hollinger's name, but admits that she "got Hollinger's name from someone else." *Id.* She thus has not alleged facts showing that Ms. Hollinger had reason to know that Plaintiff would rely on her. Moreover, Plaintiff's allegations about Ms. Hollinger's knowledge and her relationship with Plaintiff are conclusory and "cannot defeat a motion to dismiss." *See Roache v. Fischer*, No. 9:12-CV-1034 LEK/DEP, 2015 WL 1442963, at *6 (N.D.N.Y. Mar. 26, 2015).

[3] Plaintiff also seems to suggest that *Estate of Schneider*, 933 N.E.2d 718, and the privity rule in general are somehow "limited to 'estate planning malpractice claims,'" Pl. Opp'n Mem. at 8. This argument plainly fails because even the court in *Estate of Schneider* recognized that, absent special circumstances, the general privity requirement must be met to "maintain a claim against an attorney in professional negligence." 933 N.E.2d at 720. Since then, New York courts have continued to apply the rule in contexts besides estate planning. *See, e.g., Zinnanti v. 513 Woodward Ave. Realty, LLC*, 963 N.Y.S.2d 269, 270 (N.Y. App. Div. 2013) (applying the privity requirement to a negligence claim arising out of a mortgage closing).

553 (E.D.N.Y. 2015). "Under New York law, courts will dismiss claims that are entirely duplicative when they are premised on the same conduct and seek the same relief," including claims for breach of contract, tortious interference, and fraud. *Gordon*, 133 F. Supp. 3d at 553; *see also Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009); *Decker v. Nagel Rice LLC*, No. 09–CV–9878 (SAS), 2010 WL 2346608, at *4 (S.D.N.Y. May 28, 2010); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 376 (S.D.N.Y. 2004); *Reyes v. Leuzzi*, 814 N.Y.S.2d 564, 2005 WL 3501578, at *4 (N.Y. Sup. Ct. 2005). A fraud claim in particular may be "asserted in connection with charges of professional malpractice, . . . only to the extent that it is premised upon one or more affirmative, intentional misrepresentations . . . which have caused additional damages, separate and distinct from those generated by the alleged malpractice." *Decker*, 2010 WL 2346608, at *4 (citing *White of Lake George Inc. v. Bell*, 674 N.Y.S.2d 162, 163 (N.Y. App. Div. 1998)).

Here, Plaintiff seeks $175,000 based on Defendants' negligent failure to transfer the Autoliv shares. Compl. ¶¶ 24–35. Plaintiff's remaining claims incorporate these allegations (along with the $175,000 demand for relief), but also seek damages for the $200,000 check that Mr. Curry gave to Plaintiff. *See id.* ¶¶ 58, 60, 65. To the extent that Plaintiff seeks to recover for breach of contract, tortious interference, or fraud based on Defendants' failure to carry out Mr. Curry's instructions to transfer the Autoliv shares, those claims are dismissed as duplicative with her legal-malpractice claim. *See id.* ¶¶ 26–27, 57, 64; *England v. Feldman*, No. 11–CV–1396 (CM), 2011 WL 1239775, at *5 (S.D.N.Y. Mar. 28, 2011) (dismissing claims as duplicative where they "ar[o]se from the same facts as the legal malpractice claim . . . and d[id] not allege any distinct damages other than the damages suffered as a result of the legal malpractice."); *see also Decker*, 2010 WL 2346608, at *4.

Plaintiff's claims for fraud, tortious interference, and breach of contract, however, also include a claim for damages arising from Defendants' actions with the $200,000 check. Nowhere in the Complaint does Plaintiff argue that Defendants committed legal malpractice or were negligent with regard to that sum. *Compare* Compl. ¶ 35 (seeking only $175,000 for legal malpractice) *with id.* ¶¶ 58, 60, 65 (seeking $375,000 for each of the other claims). Thus, to the extent that Plaintiff's claims are based on the Defendants' involvement with the $200,000 check, they are not duplicative with her legal-malpractice claim and are addressed below.

**D. Fraud**

To state a claim for fraud under New York law, Plaintiff must allege "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015).

Defendants argue that Plaintiff's fraud claim should be dismissed because she has not pled fraud with the requisite specificity under the Federal Rules of Civil Procedure. "When a federal district court sits in diversity, it applies the Federal Rules of Civil Procedure[.]" *Id.* at 169. Under Rule 9(b), Plaintiff "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. To satisfy this rule, "the complaint must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin.*, 797 F.3d at 171 (citation and internal quotation marks omitted). Although mental states may be pleaded "generally," Plaintiff must also allege facts "that give rise to a strong inference of fraudulent intent." *Id.* (citation and internal quotation marks omitted). As

11

always, the ultimate question is whether Plaintiff's non-conclusory allegations, taken together with reasonable inferences drawn therefrom, "plausibly indicate Plaintiff['s] entitlement to relief." *Id.*

In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff asserts that the following omissions were fraudulent: (1) Ms. Hollinger's failure to tell Plaintiff she "likely had no legal obligation to return the funds, or that she should consult with counsel" when Ms. Hollinger instructed Plaintiff to return the $200,000 check; and (2) Ms. Hollinger's failure to tell Mr. Curry or Plaintiff that the check "had not violated the law and that [Mr. Stabile's] threat of calling the police potentially involve[d] the use of coercion and undue influence by Stabile." Pl. Opp'n Mem. at 11.[4] Only the first of these two omissions is specifically identified in the Complaint. *See* Compl. ¶¶ 51, 53. In any event, Plaintiff has not alleged facts that give rise to a "strong inference of fraudulent intent" for either omission. *Loreley Fin.*, 797 F.3d at 177. Such an inference must be "at least as compelling as any opposing inference one could draw from the facts alleged," and may be drawn from "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (citations omitted). Plaintiff has alleged Ms. Hollinger was motivated to help Mr. Stabile (at least with regard to delaying the transfer of Autoliv shares) because she wanted to profit from his business going forward. *See* Compl. ¶¶ 41, 50. But Plaintiff has alleged no facts creating a strong inference that Ms. Hollinger intended to deceive Plaintiff by demanding the return of the $200,000 funds. Thus, she has failed to allege fraud under Fed. R. Civ. P. 9(b).

Alternatively, Defendants argue that Plaintiff's fraud claim should be dismissed because Ms. Hollinger did not have a duty to Plaintiff. Under New York law, material omissions are

---

[4] Plaintiff also seems to argue that Defendant's failure to deliver the Autoliv shares to Plaintiff and her failure to meet privately with Mr. Curry at various times were fraudulent acts. Pl. Opp'n Mem. at 10, 11. But fraud under New York law requires "a material misrepresentation or omission of a fact"—not simply an action taken in self-interest. *See Loreley Fin.*, 797 F.3d at 170; *see also New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995). Moreover, to the extent that Plaintiff claims fraud based on Defendants' failure to transfer the Autoliv shares, that claim is duplicative with her legal-malpractice claim, as explained above.

12

fraudulent only if the speaker had a duty to disclose the relevant information that he or she failed to share. *See Cobalt Partners, L.P. v. GSC Capital Corp.*, 97 A.D.3d 35, 42–43 (N.Y. App. Div. 2012). That duty can arise if the speaker has a fiduciary relationship with the other party. *Id.* "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005). To plead the existence of a fiduciary duty, therefore, Plaintiff must allege that she and Defendants "create[d] their own relationship of high trust," such as an "advisory relationship." *Id.* (citation omitted). As explained above, however, Plaintiff has failed to allege any such relationship. Plaintiff responds that "the law firm had a duty" to her "to deliver [the] stock and check to her"—but Ms. Hollinger's fiduciary duty was never to Ms. Hollinger, it was to her client Mr. Curry.

In the absence of a fiduciary relationship, a duty to disclose arises "only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995) (citation omitted); *see also Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 F. App'x 488, 489 (2d Cir. 2009). Here, the omissions about which Plaintiff complains effectively amount to failures to give legal advice—not true omissions of fact. Assuming arguendo that Ms. Hollinger's failure to advise Plaintiff about her legal rights were omissions of fact, Plaintiff's claim still fails because there are no facts indicating that Ms. Hollinger was aware of Plaintiff's purported misunderstanding. Instead, the Complaint simply concludes that Ms. Hollinger "knew or should have known that Plaintiff relied upon [her] for advice and for conveying to Plaintiff accurate information," Compl. ¶ 43, and that Ms. Hollinger "made material misstatements and omissions to Plaintiff." Compl. ¶ 56. Such conclusory statements "cannot defeat a motion to dismiss." *See*

13

*Roache v. Fischer*, No. 9:12-CV-1034 LEK/DEP, 2015 WL 1442963, at *6 (N.D.N.Y. Mar. 26, 2015); *see Flutie Bros. v. Hayes*, No. 04–CV–4187 (DAB), 2006 WL 1379594, at *9 (S.D.N.Y. May 18, 2006); *see also Gearren v. The McGraw-Hill Companies, Inc.*, 660 F.3d 605, 611 (2d Cir. 2011). Thus, Plaintiff has failed to state a claim for fraud.

**E. Breach of Contract and Tortious Interference**

Plaintiff's claim for breach of contract is plainly meritless. To plead breach of contract as a third-party beneficiary, Plaintiff must allege the existence of "a valid and binding contract between other parties" that was "intended for [her] benefit," and that "the benefit was immediate, and not incidental, so as to 'indicate duty to compensate [her] if the benefit is lost.'" *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 589–90 (2d Cir. 2005) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 (1983)). In the Complaint, Plaintiff alleges that Mr. Curry hired Defendants in May or June 2013. *See* Compl. ¶ 8, 11. She further alleges that Mr. Curry "instructed" Ms. Hollinger to transfer the Autoliv shares and "request[ed]" that Ms. Hollinger assist him in giving Plaintiff the $200,000 check. *Id.* ¶ 9, 11, 16, 45. According to Plaintiff, the instructions that Mr. Curry gave to Defendants were contracts to which she was the intended beneficiary. Pl. Opp'n Mem. at 12–13. But nowhere does the Complaint plausibly allege that Mr. Curry's instructions were either independent valid contracts or bargained-for conditions of a valid contract. *See generally Cusack v. Greenberg Traurig, LLP*, 109 A.D.3d 747, 748 (N.Y. App. Div. 2013). At best, Plaintiff alleges that she was the incidental beneficiary of Mr. Curry's general agency contract with Defendants, which is insufficient to state a claim for breach of contract as a third-party beneficiary.[5] *See Aetna Cas.*, 404 F.3d at 589–90.

---

[5] Plaintiff also asserts that she has "state[d] a claim for violation of a the [sic] duties of a bailee to a third-party." Pl. Opp'n Mem. at 14. She did not include a claim for bailor-bailee liability in her Complaint. Even if she had, the claim would be dismissed as duplicative of her legal-malpractice claim, since such a claim would have to be premised on Defendants' power to control (and alleged failure to deliver) the Autoliv shares.

14

Finally, with respect to Plaintiff's claim for tortious interference with prospective economic advantage,[6] Plaintiff must plead, among other things, that she "had a business relationship" with a third party and that Defendants interfered with that relationship. *See Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009). Here, however, Plaintiff has not alleged the existence of any business relationship. *See generally Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 49 (N.Y. App. Div. 2009). She alleges only that Defendants interfered with gifts that she should have received from Mr. Curry—and gifts, by definition, are not based in business. Moreover, "New York . . . has not recognized a right of action for tortious interference with prospective inheritance," so Plaintiff cannot proceed under that theory. *See Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 254 (S.D.N.Y. 2002); *see also Knapp v. Maron*, No. 14-CV-10121 (NSR), 2016 WL 2851563, at *3 (S.D.N.Y. May 12, 2016). Thus, Plaintiff's tortious interference claim fails.

Plaintiff notes in her opposition brief that Defendants have not addressed the merits of her claims for breach of contract and tortious interference. *See* Pl. Opp'n Mem. at 5. Indeed, Defendants rest their motion to dismiss those claims on the theory that they are duplicative of Plaintiff's legal-malpractice claim. Even so, "[a] district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." *Wisoff v. City of Schenectady, N.Y.*, 568 F. App'x 28, 30 n.2 (2d Cir. 2014); *see also Hamilton v. Wilson*, No. 03 CIV. 5685 (GEL), 2004 WL 169789, at *5 (S.D.N.Y. Jan. 28, 2004). Here, Plaintiff has been given an opportunity to defend her Complaint and has attempted to defend her breach-of-contract claim on the merits. *See* Pl. Opp'n Mem. at 12–14.

---

[6] Plaintiff does not specify what kind of "tortious interference" claim she is bringing in her Complaint, but identifies her claim as one for tortious interference with prospective economic advantage in her opposition brief. Pl. Opp'n Mem. at 5.

15

She has not, however, responded to the argument that her claim for tortious interference as to the $200,000 check fails as a matter of law. In an abundance of caution, and in light of Defendants' failure to make the argument on which the Court now relies, the Court will give Plaintiff another opportunity to respond, but will dismiss her remaining claim unless Plaintiff "provides the Court with [a] legally sufficient justification" for allowing her to proceed on that claim. *Hamilton*, 2004 WL 169789, at *5.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is granted with respect to all claims except Plaintiff's claim for tortious interference to the extent it relates to Defendants' actions involving the $200,000 check. Plaintiff is directed to show cause, no later than January 12, 2018, why that claim should not be dismissed on the merits as explained above. Otherwise, that claim will, like the rest of the Complaint, be dismissed.

SO ORDERED.

Dated: December 19, 2017
New York, New York

*[signature]*
Ronnie Abrams
United States District Judge