UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOROTHY LEMON,

        Plaintiff,

v.

JERRIETTA R. HOLLINGER and GANZ &
HOLLINGER, P.C.,

        Defendants.

No. 17-CV-4725 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Dorothy Lemon sued Defendants Jerrietta Hollinger and Ms. Hollinger's law firm, Ganz & Hollinger, P.C., asserting claims for negligence, tortious interference, fraud, and breach of contract in conjunction with Defendants' representation of Allan Curry—a friend of Plaintiff's who passed away in October 2013. In December 2017, this Court dismissed all of Plaintiff's claims except her claim that Defendants tortiously interfered with a gift of $200,000 that Mr. Curry allegedly intended to give to Plaintiff. The Court ordered Plaintiff to show cause why that claim should not also be dismissed. *See* Opinion & Order ("2017 Op.") (Dkt. 28). Now before the Court is Plaintiff's response to that order, which also included a request for reconsideration of other aspects of the Court's 2017 Opinion. For the reasons below, Plaintiff's remaining tortious-interference claim is dismissed and her request for reconsideration is denied.

## BACKGROUND

The Court presumes the reader's familiarity with the facts of this case, recited in the Court's 2017 Opinion and drawn from Plaintiff's Complaint. In short, Ms. Lemon was close friends with a man named Allan Curry, who passed away in October 2013 after allegedly attempting to make

1

or making several "in causa mortis" gifts to her and another friend of his named Alan Stabile. *See* Compl. ¶¶ 8, 10, 16, 38. Mr. Stabile, meanwhile, allegedly received or purchased several pieces of property from Mr. Curry prior to his death, became the executor to Mr. Curry's estate, and was a beneficiary of his will. *Id.* ¶¶ 20, 38, 40. Throughout the months preceding Mr. Curry's death, Defendants Ms. Hollinger and her law firm represented Mr. Curry. In the course of that representation, Ms. Hollinger purportedly interfered with or failed to execute on Mr. Curry's behalf two gifts—a gift of shares in a company called Autoliv, Inc., and a $200,000 check—that Mr. Curry allegedly wanted Ms. Lemon to receive and keep prior to his death. Ms. Hollinger also allegedly represented Mr. Stabile at one point during the same period. *Id.* ¶ 38.

Plaintiff filed this lawsuit against Ms. Hollinger and her law firm for an assortment of claims relating to those two gifts. In December 2017, this Court dismissed all of those claims except Ms. Lemon's claim that Ms. Hollinger tortiously interfered with her receipt of the $200,000 check. The Court ordered Plaintiff to show cause why that claim should not also be dismissed. In response, Plaintiff submitted a letter dated January 10, 2018, arguing that she had stated a claim for tortious interference and that the Court should reconsider its 2017 Opinion, particularly with regard to Plaintiff's claims for damages based on Defendants' involvement with the Autoliv shares (the "Autoliv Claims"). *See* P's Resp. (Dkt. 30). The Court thereafter ordered Plaintiff to explain why her request for reconsideration was timely. *See* Endorsed Letter (Dkt. 31). Plaintiff conceded that it was not timely, but requested an extension of time. *See* P's Letter Motion (Dkt. 32). Defendants responded in opposition, and Plaintiff replied. *See* Dkt. 33, 35, 36, 37.

## DISCUSSION

### I. Motion for Reconsideration

As an initial matter, the Court will address Plaintiff's request for reconsideration. Although it was filed late and, ultimately, not filed with a Notice of Motion in accordance with Local Civil

Rule 6.3, the Court will consider Plaintiff's motion as submitted, which the Rules allow it to do. The Court has reviewed Plaintiff's various letters and arguments in support of her request for reconsideration and finds them unavailing for the reasons below.

### A.     Legal Standard

"Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b)." *Farmer v. United States*, No. 15-CV-6287 (AJN), 2017 WL 3448014, at *2 (S.D.N.Y. Aug. 10, 2017) (quoting *Shaw v. Mcdonald*, No. 14-CV-5856 (NSR), 2016 WL 828131, at *1 (S.D.N.Y. Feb. 22, 2016)). "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Cohen Lans LLP v. Naseman*, No. 14-CV-4045 (JPO), 2017 WL 1929587, at *1 (S.D.N.Y. May 10, 2017) (quoting *Pablo Star Ltd. v. Welsh Gov't*, No. 15-CV-1167 (JPO), 2016 WL 2745849, at *1 (S.D.N.Y. May 11, 2016)). "In order to prevail on a motion for reconsideration, a movant must demonstrate '(i) an intervening change in controlling law; (ii) the availability of new evidence; or (iii) the need to correct clear error or prevent manifest injustice.'" *Id.* (quoting *Pablo Star*, 2016 WL 2745849, at *1). "The standard governing motions for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp., Inc.*, No. 15-CV-6114 (PAE), 2017 WL 1283843, at *1 (S.D.N.Y. Apr. 5, 2017) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). "A motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-CV-488 (LGS), 2017 WL 1378276, at *1 (S.D.N.Y. Apr. 14, 2017) (quoting *Analytical Surveys*, 684 F.3d at 52); *see also de los Santos v. Fingerson*, No. 97-CV-3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998) ("[T]he proponent

3

of a motion for reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.").

B.   **Reconsideration of the Autoliv Claims**

Plaintiff makes two arguments in support of her request that the Court reconsider its dismissal of the Autoliv Claims. First, she argues that her fraud and tortious-interference claims, as they relate to the Autoliv shares, should not have been dismissed as duplicative of her legal-malpractice claim. *See* P's Resp. at 3. Plaintiff asserts that those two claims were accompanied in her Complaint by a request for punitive damages, which she contends are unavailable for her legal-malpractice claim. Thus, Plaintiff concludes, the punitive-damages claims involve potentially different damage recoveries than her legal-malpractice claim and are not duplicative.

This is the first time that Plaintiff has raised this argument—she did not mention punitive damages in her opposition to Defendants' motion to dismiss, let alone argue that requesting punitive damages should make her claims non-duplicative under New York law. Indeed, her entire opposition to the duplicity argument Defendants made in their motion to dismiss consisted of the following paragraph:

> Defendants' reliance on *Norwind v. Rowland*, 584 F.3d 420 (2d Cir. 2009) for the proposition that all claims herein are duplicative of each other is also inaccurate. In *Norwind*, all counts involved the allegation of misconduct by the attorney as an attorney (malpractice and breach of fiduciary duty arising from the same facts). Here, the fraud and contractual claims and the violation of the bailment contract do not rest solely upon or implicate the attorney client relationship and stand independently of the attorney negligence claim in Count 1.

P's Mem. Opp'n at 14 (Dkt. 17). Plaintiff thus did not directly challenge Defendants' contention that "all of plaintiff s claims against the law firm . . . seek the same relief," and did not address Defendants' argument that the tortious-inference claim—which Plaintiff's paragraph on duplicity in her opposition brief fails to mention—was duplicative of Plaintiff's legal-malpractice claim.

4

Even now, Plaintiff cites just one New York case and one federal district court case in support of her argument, and neither is particularly helpful. The first case Plaintiff cites is *Doody v. Liberty Mutual Group, Inc.*, 27 N.Y.S.3d 617 (N.Y. App. Div. 2016).[1] There, the New York Appellate Division, Second Department, held that "the cause of action alleging breach of the covenant of good faith and fair dealing" was "not wholly duplicative of the cause of action alleging breach of contract," but the Court neither specified its reasons for so concluding nor mentioned punitive damages. *Id.* at 618. Plaintiff also cites *Coyne International Enterprises Corp. v. Mylan Pharmaceuticals, Inc.*, No. 5:13-CV-821 (MAD) (TWD), 2014 WL 2766189, at *1 (N.D.N.Y. June 18, 2014). The court in *Coyne* concluded—without citation to any controlling New York case that might mandate reconsideration here—that the plaintiff could "plead in the alternative" claims under the Uniform Commercial Code with claims for conversion, unjust enrichment, and breach of contract. *Id.* at *3–5. The *Coyne* court did not mention punitive damages.

Under New York law, claims are not duplicative when a plaintiff "allege[s] distinct damages." *See Fin. Servs. Vehicle Tr. v. Saad*, 900 N.Y.S.2d 353, 354 (N.Y. App. Div. 2010); *see also, e.g., Perez v. Violence Intervention Program*, 984 N.Y.S.2d 348, 349 (N.Y. App. Div. 2014). There is some uncertainty, however, regarding whether a request for punitive damages constitutes an allegation of distinct damages when the essence of the claims and relief sought is otherwise the same. Plaintiff has cited no controlling authority—and this Court has found none—holding that a request for punitive damages can save an otherwise duplicitous claim from dismissal under New York law. The only decisions that this Court has found addressing the question have held precisely the opposite. *See MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp. 2d

---

[1] Plaintiff cites this case as "Doody v. Liberty Mutual, 2016 N.Y. Slip Op 02339 (2d Dept 2016)," *see* P's Resp. at 3, but that citation leads to *Pandarakalam v. Liberty Mut. Ins. Co.*, 29 N.Y.S.3d 413 (N.Y. App. Div. 2016), which does not discuss duplicity. The Court therefore assumes that Plaintiff meant to cite to *Doody* at 2016 N.Y. Slip Op. 01798, also reported at 27 N.Y.S.3d 617.

5

518, 532 n.13 (S.D.N.Y. 2010) ("Plaintiff also seeks punitive damages under its breach of fiduciary duty claim and thus argues that its breach of fiduciary duty claim seeks distinct damages. This tactic is insufficient to avoid application of the bar on duplicative claims and would in fact render it meaningless."), *aff'd*, 410 F. App'x 408 (2d Cir. 2011); *see also, e.g.*, *143 Bergen St. LLC v. Ruderman*, 969 N.Y.S.2d 804, 2013 WL 1285883, at *7 & n.2 (N.Y. Sup. Ct. 2013) (table); *Waggoner v. Caruso*, 873 N.Y.S.2d 238, 2008 WL 4274491, at *22 (N.Y. Sup. Ct. 2008) (table). Plaintiff further fails to identify any other valid basis—*i.e.*, "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"—for reconsidering the Court's prior ruling that the Autoliv Claims are all duplicitous of Plaintiff's legal-malpractice claims. *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (citation omitted). The Court thus adheres to that decision.

Second, Plaintiff argues that the Court should reconsider its dismissal of Plaintiff's legal-malpractice claim and, in particular, its conclusion that Plaintiff failed to allege "special circumstances" excusing her lack of privity with Defendants. In addressing this claim originally, Plaintiff cited *Deep Woods Holdings v. Pryor Cashman* to argue that special circumstances existed and excused the privity requirement. 43 N.Y.S.3d 27 (N.Y. App. Div. 2016). In that case, the purported malpractice occurred while the defendant law firm represented a non-party to the case who owned an option to purchase stock in a company. *Id.* at 28–29. The law firm allegedly failed to exercise that option in a timely manner, which apparently rendered the option worthless. *Id.* The law firm then represented both the original option owner and the plaintiff in drafting a contract to assign to the plaintiff the original owner's then-worthless rights in the option. *Id.* Once that assignment occurred, it was not clear whether anyone would be able to sue the defendant law firm

6

for failing to timely exercise the option. The court thus concluded that the law firm was equitably estopped from arguing that the assignment did not include the right to bring the malpractice action. *Id.* at 29–30. With regard to the privity issue, the court stated that there were special circumstances because (1) the defendant law firm had "drafted the assignment at a time when it represented both [the original option owner] and plaintiff," and (2) "interpreting the assignment to exclude tort claims would mean that neither the assignor nor plaintiff, the assignee, would be able to sue defendants for malpractice for failing to exercise the call option in a timely manner[.]" *Id.* To hold otherwise, the court added, "might [have] insulate[d] defendants from liability for their alleged wrongdoing." *Id.* at 30. In this Court's 2017 Opinion, it considered and rejected that holding's application here, because "Mr. Curry's estate representative would, in theory at least, be able to sue Defendants" for their alleged malpractice. 2017 Op. at 6. The Court likewise rejected Plaintiff's argument that Mr. Stabile—the estate representative—lacked any incentive to bring such claims and therefore would not. In so doing, the Court interpreted the Complaint to be alleging that Mr. Stabile has an incentive to bring suit as the estate representative.

Plaintiff now contends that the Court's interpretation of the Complaint was incorrect and reasserts that Mr. Stabile has a significant incentive not to sue Defendants for their alleged malpractice. *See* P's Resp. at 4. In particular, Plaintiff attempts to explain the ways in which the Holman Estate and the Curry Estate were related and the manner in which the failure to transfer the Autoliv shares benefited Mr. Stabile as a beneficiary of both estates. *See* P's Resp. at 4. Plaintiff supports her argument by reference to facts apparently not alleged in the Complaint, including that Mr. Stabile was the residual beneficiary of Mr. Curry's estate rather than just one of the beneficiaries thereof. *See* Compl. ¶¶ 20, 37, 40.

7

Even if Plaintiff were correct that Mr. Stabile benefitted from Defendants' alleged wrongdoing and lacks the incentive to sue, this Court need not reconsider its 2017 Opinion. The Court's discussion of Mr. Stabile's motivations in the 2017 Opinion was merely illustrative of one of the numerous distinctions between this case and *Deep Woods*. As the Court observed in its 2017 Opinion and unlike in *Deep Woods*, there still exists someone who, in theory at least, could sue Defendants for their alleged misconduct. Moreover, even assuming that Mr. Stabile could not succeed in a malpractice lawsuit against Defendants on behalf of the estate, this case remains different from *Deep Woods* because Defendants here never represented Plaintiff in any capacity and Plaintiff has not shown that Defendants should be equitably estopped from asserting the lack of privity as a defense.

To date, Plaintiff has not presented any controlling authority to this Court establishing that, under New York law, the circumstances alleged in the Complaint are sufficiently "special" so as to justify excusing the privity requirement. The Court is cognizant, moreover, that the New York Court of Appeals has cautioned that "[r]elaxing privity to permit third parties to commence professional negligence actions against estate planning attorneys would produce undesirable results—uncertainty and limitless liability." *Estate of Schneider v. Finmann*, 933 N.E.2d 718, 721 (N.Y. 2010); *see also Jacobs v. Kay*, 857 N.Y.S.2d 81, 82 (N.Y. App. Div. 2008) ("Absent a contractual relationship between the professional and the party claiming injury, the potential for liability 'is carefully circumscribed.'"). This Court thus remains convinced that Plaintiff's Autoliv Claims are barred by the privity requirement.

The Court expresses no view, however, as to whether the gift that Mr. Curry allegedly intended to give to Plaintiff was valid and irrevocable, as Plaintiff asserts. *See* P's Resp. at 5. The cases that Plaintiff cites in support of her argument for the gift's validity both involve plaintiffs

who claimed to be the rightful owners of property, allegedly conveyed to them by *inter vivos* gifts prior to the gift givers' deaths, who were suing either the possessors of the property they sought or the executors of the relevant estate in probate to settle the estate's account. *See Gruen v. Gruen*, 496 N.E.2d 869, 870 (N.Y. 1986); *In re Cohn*, 176 N.Y.S. 225, 229 (N.Y. App. Div. 1919). These cases provide no ground for reconsidering this Court's decision that Plaintiff cannot recover those gifts from Mr. Curry's attorneys—who do not presently possess or control the property that Plaintiff seeks—in this non-probate action.

### C. Reconsideration of Claim for Breach of Contract as to the $200,000 Check

Plaintiff also appears to argue that the Court should reconsider its dismissal of her third-party claims for breach of contract as they relate to the gift of the $200,000 check because she was "not a mere 'incidental beneficiary' of the $200,000." P's Resp. at 3. Plaintiff has not, however, provided the Court any reason to reconsider its conclusion that Mr. Curry's "instruction" to Defendants to deliver the gift—an instruction that Plaintiff concedes Defendants actually followed, before they later allegedly asked her to return the check—was not an "independent valid contract[]" or a "bargained-for condition[]" of one. 2017 Op. at 14. The Court thus adheres to its dismissal of Plaintiff's breach-of-contract claim.[2]

## II. Tortious Interference with the $200,000 Check

Plaintiff's only remaining claim is for tortious interference with her receipt and possession of Mr. Curry's $200,000 check. In the 2017 Opinion, this Court noted that Plaintiff failed to plead tortious interference under a "prospective economic advantage" theory and could not proceed on the theory that her tortious interference was based on a "prospective inheritance" because New

---

[2] Plaintiff does not appear to request reconsideration of the Court's dismissal of her fraud claim as it relates to the $200,000 check. To the extent that she makes any such argument, she has presented no persuasive basis for reconsideration.

9

York does not recognize such a cause of action. 2017 Op. at 15. The Court raised these concerns *sua sponte*, and thus provided Plaintiff with an opportunity to show cause why her tortious-interference claim should not be dismissed under Fed. R. Civ. 12(b)(6). *See Wisoff v. City of Schenectady, N.Y.*, 568 F. App'x 28, 30 n.2 (2d Cir. 2014) ("A district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard."). Dismissal is appropriate when, "accept[ing] all factual allegations as true" and "draw[ing] all reasonable inferences in the plaintiff's favor," a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *See id.* (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)).

Plaintiff makes two arguments in response to this Court's order to show cause. First, Plaintiff argues that she has stated a claim for tortious interference with a contract because she was a third-party beneficiary of the contract between Mr. Curry and Defendants and because Defendants interfered with her benefits from that contract. New York law does appear to "permit[] third-party beneficiaries to recover damages for tortious interference with a contract." *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 270 (S.D.N.Y. 2006), *aff'd on other grounds sub nom. Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 119, 123 & n.11 (2d Cir. 2008); *see also Seaver v. Ransom*, 224 N.Y. 233, 239–40 (1918). But Plaintiff cannot succeed on this theory here because—for the reasons stated above and in the 2017 Opinion—there was no independent contract between Mr. Curry and Defendants of which Ms. Lemon could have been an intended third-party beneficiary. Moreover, as to the $200,000 check at least, the Complaint asserts that Defendants followed Mr. Curry's instructions to deliver the check to Plaintiff in the first place. Compl. ¶ 49. Plaintiff's allegation that Defendants thereafter "caused" Mr. Curry to request the return of funds and convinced Ms. Lemon to comply with that request, *see id.* ¶¶ 50–

10

51, does not establish the existence of or interference with any contract of which Plaintiff was an intended third-party beneficiary.

Second, Plaintiff argues that she has stated a claim for a tortious interference with a gift.[3] Although Plaintiff acknowledges that New York does not recognize tortious interference with inheritance, she contends that the alleged interference here involves a concrete gift rather than a speculative future inheritance and that tortious interference with a gift is a separate cause of action. In support of her argument, Plaintiff asserts that she "ha[s] not located any case that would preclude the claim for tortious inference with a gift" and cites Restatement (Second) of Torts § 774B (1979), which states that "[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or **gift** that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." *See* P's Resp. at 2 (quoting Restatement (Second) of Torts § 774B)) (adding emphasis to the word "gift").

This Court has not found a single case explicitly addressing whether, under New York common law, there exists a cause of action for tortious interference with a gift under the circumstances alleged in this case. Thus, this Court—lacking the authority to certify the questions to the New York Court of Appeals—must "make a prediction as to what New York courts would hold under these circumstances." *See Amalfitano v. Rosenberg*, 533 F.3d 117, 126 (2d Cir. 2008).

Although some states have found that there is a cause of action for tortious interference with a gift, New York courts have been almost completely silent on the question. *See generally Liability in Damages for Interference with Expected Inheritance or Gift*, 22 A.L.R.4th 1229, at

---

[3] Plaintiff makes several additional arguments regarding the validity and effectiveness of the relevant gift. *See* P's Resp. at 4; P's Reply at 2 (Dkt. 35). The cases that Plaintiff cites in support of these arguments, however, do not involve claims for tortious interference. *See Scott v. Union & Planter's Bank & Trust Co.*, 130 S.W. 757, 761–62, 768 (Tenn. 1910) (upholding a *causa mortis* gift without discussing tortious interference); *Ridden v. Thrall*, 26 N.E. 627, 628–30 (N.Y. 1891) (same).

§ 8, 1983 WL 191057 (1983) (gathering cases). There is one opinion—albeit a very old one—from the New York Court of Appeals, however, which strongly suggests that there is no such cause of action under New York law. *See Simar v. Canaday*, 53 N.Y. 298, 303 (1873). In that case, the court held that a woman who purportedly received a gift of land from her husband had no right to sue the defendant after the defendant allegedly had defrauded her husband with respect to the relevant land. *Id.* at 302. Although the facts in that case were distinguishable from those here—because the fraud allegedly occurred before the husband conveyed the gift rather than afterwards—the court's reasoning reached beyond the case's facts in concluding that "[t]he refusal or discontinuance of a favor gives no right of action. That a favor done is not fruitful of profit by reason of the wrongful act of a third person preventing, brings no different result." *Id.* at 303.

As explained above, the Complaint here alleges that Mr. Curry, acting through Defendants, gave Plaintiff a check worth $200,000, which Plaintiff deposited. Then, according to Plaintiff, Mr. Stabile conspired with Defendants to threaten Plaintiff and to "cause[] Mr. Curry to sign a letter requesting the return of the funds." Compl. ¶ 50. Plaintiff returned the money as requested. *Id.* ¶ 51. These allegations amount to a "discontinuance of a favor" that, under *Simar*, would appear to "give[] no right of action," even when caused by the "wrongful act of a third person." *See* 53 N.Y. at 303. This Court has no better indication of how the New York Court of Appeals would act than that court's own words—whether those words were dicta or holding. Moreover, although *Simar* is nearly 150 years old, New York courts have recently abided by New York's even older rule that there is no cause of action for tortious interference with an inheritance. *See Vogt v. Witmeyer*, 665 N.E.2d 189, 190 (N.Y. 1996) (citing *Hutchins v. Hutchins*, 7 Hill 104 (N.Y. Sup. Ct. 1845)); *see also O'Sullivan v. Hallock*, 956 N.Y.S.2d 273, 274 (N.Y. App. Div. 2012). Without some indication that the Court of Appeals would reconsider its reasoning in *Simar*, this Court is

12

hesitant to do so. Thus, even if Plaintiff were correct and New York courts might treat gifts and inheritances differently, this Court is nonetheless persuaded that, in light of *Simar*, they are unlikely to create a cause of action for tortious interference with a gift. Plaintiff's claim for tortious interference with a gift therefore fails, and the Court need not reach Defendants' new argument that the claim is barred by the statute of limitations. *See* D's Opp'n at 2 (Dkt. 33).

## CONCLUSION

For the reasons explained above, Plaintiff's request for reconsideration is denied and her Complaint is dismissed in full for its failure to state a claim on which relief can be granted.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 32, enter judgment for Defendants, and close the case.

SO ORDERED.

Dated: May 14, 2018
New York, New York

Ronnie Abrams
United States District Judge